## MORALES *v.* ARCE.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 808.—Resuelto en junio 21, 1912.

INDEBIDA ACUMULACIÓN DE CAUSAS DE ACCIÓN—REMEDIO DEL DEMANDADO.—Cuando una demanda adolece del defecto de indebida acumulación de causas de acción, el remedio del demandado, es excepcionar la demanda por ese fundamento, y no presentar una moción para que la corte obligue al demandante a enmendar la demanda exponiendo separadamente las distintas causas de acción.

DEFECTO DE PARTES DEMANDADAS—NOMBRES DE LAS PARTES NECESARIAS.—Para que pueda interponerse con éxito contra una demanda la excepción de defecto de partes demandadas, es necesario que tal defecto aparezca de la faz de la demanda, y la excepción debe expresar los nombres de las partes demandadas necesarias no incluídas en la demanda, y si no se hace así, la excepción es defectuosa.

Reconvención—Reclamaciones de Dinero—Cuentas.—La reconvención tiene por objeto principal, reclamaciones de dinero o relacionadas con cuentas, y no cuestiones relacionadas con el derecho de propiedad a bienes muebles o inmuebles.

Id.—Interpretación de Ley—Reconvención en Tercerías de Dominio.—Los preceptos del artículo 112 del Código de Enjuiciamiento Civil no tienen aplicación al procedimiento de tercería de dominio, y por lo tanto, cuando en tal procedimiento la persona que ha obtenido el embargo a su favor, deja de alegar por vía de reconvención, el carácter fraudulento del título del tercerista, eso no le impide el que pueda promover después una acción para rescindir el título del tercerista por ser un traspaso de carácter fraudulento hecho en fraude de acreedores.

Tercería de Dominio—Acción Rescisoria—Acumulación de Acciones—Cosa Juzgada.—Una acción de rescisión de un contrato por ser un traspaso fraudulento hecho en fraude de acreedores, no puede acumularse a un procedimiento de tercería de dominio en el. que se discute la propiedad de los bienes embargados, y una sentencia dictada en tal procedimiento de tercería de dominio no puede después ser alegada como fundamento de la excepción de cosa juzgada en la acción rescisoria para rescindir el título del tercerista.

Acción Rescisoria—Traspaso Hecho en Fraude de Acreedores.—Examinada la prueba en el caso de autos, este tribunal resolvió, que habiéndose justificado la existencia de la deuda, la insolvencia del deudor y la imposibilidad del acreedor de hacer efectiva la sentencia que había obtenido contra su deudor, y tomadas en consideración las otras circunstancias del caso, es indudable que el traspaso objeto de este pleito fué hecho en fraude de acreedores y por lo tanto es rescindible.

Id.—Carácter Subsidiario de la Acción Rescisoria.—Cuando un deudor por sentencia, traspasa sus bienes dejando a su acreedor por sentencia imposibilitado de cobrar su crédito, procede la acción rescisoria para rescindir el traspaso hecho por el deudor en fraude del acreedor, y aunque la acción rescisoria tiene el carácter de subsidiaria, no por eso carece de todos los elementos constitutivos de una acción principal y es completamente independiente de cualquier otra acción.

Traspaso en Fraude de Acreedores—Prueba de la Existencia del Fraude—Presunción.—El descubrimiento de la intención fraudulenta es raras veces objeto de prueba directa y concluyente. Exigir prueba concluyente en un caso de fraude sería atacar y destruir los fines de la justicia. La ley por tanto solamente exige un grado razonable de certeza.

Id.—Prueba Satisfactoria del Fraude.—Personas Relacionadas Intimamente.—Para demostrar la existencia de una intención fraudulenta entre personas relacionadas confidencialmente, basta con presentar prueba satisfactoria del fraude.

Id.—Presunción del Fraude.—Cuando un deudor por sentencia traspasa a un cuñado los únicos bienes que tiene y que han sido embargados para responder de la sentencia, habiendo tenido dicho deudor como abogado en el pleito en el cual se dictó sentencia contra él, al citado cuñado a quien posteriormente le traspasó los bienes embargados, surje la presunción que determina el artículo 1264 del Código Civil Revisado, y no habiéndose presentado prueba para destruir esa presunción, tal traspaso tiene el carácter de fraudulento.

TERCERO—TERCERISTA.—No puede invocar el carácter de tercero, para que se le
    apliquen las disposiciones del párrafo 2°. del artículo 1262 del Código Civil
    Revisado, un tercerista que compra los únicos bienes que tiene un deudor
    por sentencia, y que por lo tanto ha intervenido como comprador en el citado
    contrato impugnado por el acreedor por sentencia, como fraudulento.

TRASPASOS FRAUDULENTOS—INDEMNIZACIÓN DE DAÑOS Y PERJUICIOS—CUANTÍA
    DE LA INDEMNIZACIÓN.—El adquirente de mala fe de cosas enajenadas en
    fraude de acreedores deberá indemnizar a los acreedores de los daños y per-
    juicios que la enajenación les hubiese ocasionado, o sea, el importe del crédito
    con sus intereses, o el valor de la cosa enajenada, con más los gastos que el
    ejercicio de la acción rescisoria haya ocasionado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Manuel Tous Soto.*

Abogado del apelado: *Sr. Arturo Aponte, Jr.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del
tribunal.

Este pleito fué establecido en la Corte de Distrito de Hu-
macao el día 30 de septiembre de 1910 solicitando que se res-
cindiera un contrato celebrado entre los demandados, en el que
se hacían ciertas cesiones de derechos y acciones, por el funda-
mento de que se había cometido un fraude que afectaba a
los acreedores del cedente.   Se negaron las alegaciones refe-
rentes a la comisión de dicho fraude y se sometió el caso por
alegatos escritos, el que fué resuelto por la corte sentencia-
dora el día 5 de junio de 1911 a favor del demandante, con-
tra cuya sentencia el demandado Arce que es el comprador
según el contrato, solamente interpuso recurso de apelación.
Se remitió la transcripción a este tribunal en 15 de febrero
último, celebrándose la vista de este pleito el día 3 de mayo
siguiente.

Con fecha 30 de septiembre de 1910 José E. Morales pro-
dujo demanda ante la Corte de Distrito de Humacao contra
Jacinto Blanco Carvajal y Rafael Arce Rollet, alegando los
siguientes hechos:

"1°. Que en 12 de marzo de 1907, y antes de ese día, el demandado
Jacinto Blanco era deudor de la mercantil Delgado y Díaz de Aguas
Buenas, por la suma de $403.25, y poco después de la indicada fecha
vendió esa sociedad sus existencias, activo y pasivo, a varios indivi-
duos, quienes las cedieron al demandante José E. Morales en 5 de

abril de 1907, desde cuya fecha quedó Morales al frente de las negociaciones de la referida sociedad.

"2º. Que Jacinto Blanco fué requerido por la mercantil Delgado y Díaz para que pagara la suma adeudada y ese requerimiento fué repetido por el demandante, habiendo sido siempre inútiles todas las gestiones de cobros practicadas.

"3º. Que el otro demandado Rafael Arce, casado con una hermana de Jacinto Blanco, fué advertido distintas veces de las circunstancias en que se hallaba Blanco con relación a sus acreedores, con el fin de que influyera con su cuñado para que éste verificara el pago de las deudas contraídas, entre las cuales se encontraba la del demandante.

"4º. Que Arce, sabedor de lo que pasaba a su cuñado Blanco, siempre hizo creer a los otros acreedores que las sumas adeudadas serían satisfechas cumplidamente por su referido cuñado, sobre el cual ejercía gran influencia.

"5º. Que a raíz de haber sido requerido Blanco para que pagara al demandante la suma adeudada de $403.25 y a raíz de haberse hecho a Blanco la advertencia anteriormente indicada, Blanco vendió a Arce todos sus derechos y acciones en la herencia de sus padres, con el único propósito de defraudar a los acreedores de Blanco, entre los que se encontraba el demandante por virtud de la cesión hecha en 5 de abril de 1907.

"6º. Que la cesión de derechos y acciones de Blanco a Arce fué posterior a la fecha en que se originó la deuda de Blanco con la mercantil Delgado y Díaz, y posterior también a la fecha en que se hicieron a Blanco y a Arce respectivamente los requerimientos y advertencias de que se deja hecho mérito.

"7º. Que ignorando el demandante el traspaso fraudulento verificado por Blanco a favor de Arce, presentó demanda ante la corte municipal de Caguas para el cobro de los $403.25 que le adeudaba Blanco, cuyo juicio terminó por sentencia en contra de Blanco, que fué confirmada por la Corte de Distrito de Humacao y por esta Corte Suprema.

"8º. Que librada ejecución contra el demandado Blanco, no pudo hacerse efectiva la sentencia, por no tener Blanco otros bienes que los traspasados fraudulentamente al demandado Arce.

"9º Que por virtud de la cesión de derechos y acciones hecha por Blanco a favor de Arce, intervino éste en las operaciones divisorias del caudal de los padres de Blanco y se le adjudicaron todos los bienes que al otro demandado habían de corresponder, los cuales se encuentran a nombre de Arce.

"10º. Que ambos demandados Blanco y Arce con el fraude perpe-

trado han perjudicado al demandante en más de $600 que le han hecho gastar en abogados y desembolsos judiciales y extrajudiciales para el mejor desenvolvimiento de los litigios y procedimientos a que ha dado lugar el convenio fraudulento de que se trata.

"11°. Que el crédito del demandante contra Blanco, dados los intereses devengados y las costas causadas, asciende a una suma mayor de $500."

La demanda concluye con la súplica de que se dicte sentencia a favor del demandante y en contra de los demandados, con los siguientes pronunciamientos:

"1°. Declarando la rescisión y nulidad por ser en fraude de acreedores de la escritura de cesión y traspaso de acciones y derechos otorgada por Jacinto Blanco Carvajal a favor de su cuñado Rafael Arce Rollet en 12 de marzo de 1907, ante el notario de Caguas Don José A. Cajas y Machado.

"2°. Declarando asimismo nula y sin ningún valor la adjudicación hecha al demandado Arce de los bienes que debían de corresponder al otro demandado Blanco en la testamentaría de los difuntos padres de éste, cuya adjudicación se llevó a efecto en escritura de adjudicación y participación otorgada en 22 de noviembre de 1908, ante el notario de Caguas, Don Lorenzo Jiménez García.

"3°. Condenando a los demandados Blanco y Arce al pago de $600 como indemnización de daños y perjuicios causados al demandante por los actos de fraude realizados en su perjuicio.

"4°. Imponiendo todas las costas del pleito y los honorarios de abogados a los demandados."

Emplazados ambos demandados, Rafael Arce presentó moción a la corte pidiendo se ordenara al demandante Morales enmendara su demanda, exponiendo separadamente las distintas acciones en ella acumuladas, y esa moción fué declarada sin lugar.

Posteriormente, el mismo demandado Arce opuso a la demanda las excepciones previas de no aducir hechos suficientes para determinar las diversas causas de acción en ella ejercitadas o cualquiera de las mismas; de defecto de partes demandadas, en cuanto a la nulidad de la adjudicación hecha a Rafael Arce, como cesionario de Jacinto Blanco, en la partición de los bienes relictos al fallecimiento de los

padres de Blanco, y de ser ininteligible y ambigua la demanda en cuanto a la acción de daños y perjuicios respecto del demandado Arce, cuyas excepciones también fueron declaradas sin lugar por resolución de 30 de noviembre de 1910.

Por fin Arce contestó la demanda y en su contestación acepta que por escritura pública de 12 de marzo de 1907, Delgado le hizo cesión con justa y suficiente causa de los derechos y acciones que le correspondían en la testamentaría de sus difuntos padres, habiéndose convenido dicha cesión en junio de 1906, cuando aun no había comenzado la cuenta corriente con Delgado y Díaz, y que por virtud de dicha cesión se le adjudicaron en las operaciones divisorias del caudal de los padres de Blanco todos los bienes que a éste habían de corresponder; pero niega la existencia del crédito de 403 dollars 25 centavos contra Blanco a favor de la mercantil Delgado y Díaz, que interviniera en la cesión fraude alguno por parte de Blanco y Arce para perjudicar en su pretendido crédito al demandante Morales, y que Delgado quedara insolvente con motivo de la cesión a su favor de los derechos y acciones de que se deja hecho mérito.

Alegó también Arce como materia nueva en el hecho 1°. de su contestación, "que Jacinto Blanco sostenía con Delgado y Díaz una cuenta corriente, la que aseguraba arrojar saldo a su favor; que Delgado y Díaz presentó procedimiento de quiebra ante la Corte de Distrito de los Estados Unidos en Puerto Rico, y en él presentó una relación de su activo y pasivo, en la cual asegura que el crédito contra Jacinto Blanco, por saldo de dicha cuenta corriente es solamente la cantidad de treinta dollars; que Jacinto Blanco asegura y siempre ha asegurado que dicha cuenta corriente arroja saldo a su favor; que el único crédito contra Jacinto Blanco cedido por Delgado y Díaz, y por los cesionarios de éste a José Morales, lo es aquél por treinta dollars, relacionado en el balance o relación de activo y pasivo presentado por Delgado y Díaz, en el dicho procedimiento de quiebra, y que Jacinto Blanco nada adeuda por saldo de cuenta corriente, de toma

de efectivo y mercadería en la casa de comercio de Delgado y Díaz de Aguas Buenas, ni por otro alguno, a José E. Morales o a Delgado y Díaz, así como tampoco a ninguna otra persona natural o jurídica.''

En el hecho 3°. ''que enteró de esa advertencia (de la conversación que Morales tuvo con él sobre la deuda de Blanco) a su cuñado Sr. Blanco, quien le contestó asegurándole ser acreedor de Delgado y Díaz y que éstos no habían liquidado con él su cuenta corriente, en la cual no le abonaban varias partidas de café entregadas por él a dicha sociedad.''

Alega también, ''que iniciado un pleito por José E. Morales contra Jacinto Blanco en cobro de la deuda que asegura en la alegación primera de su demanda, tiene contra éste, se enteró, que Delgado y Díaz, habían hecho a los efectos del procedimiento de quiebra antes expresado, una relación de su activo y pasivo y en ella confesaban que el crédito contra Blanco ascendía solamente a treinta dollars.''

En el hecho 12°. ''que en la tercería de dominio de ciertos bienes embargados por José E. Morales para hacer efectiva la sentencia dictada contra Jacinto Blanco, alegó ser dueño de la propiedad embargada por haber sido adjudicada al Sr. Arce Rollet en las operaciones particionales de las herencias de Don Jacinto Blanco González y Doña Encarnación Carvajal de Blanco y que tal adjudicación se le había hecho al Sr. Arce, como representante en dichas herencias de Don Jacinto Blanco Carvajal por virtud de la cesión de derechos y acciones hereditarios, otorgada a favor de dicho Arce por el heredero Sr. Blanco y que se elevó a escritura pública en doce de marzo de 1907.''

Y alega el demandado Arce ''que dicha demanda fué contestada por el Sr. Morales, sin solicitar o proponer reconvención a dicha demanda, alegando que tal contrato de cesión de derechos y acciones era nulo o rescindible por haberse celebrado en fraude de acreedores, y que en dicho pleito fué discutida la cuestión de propiedad de los bienes

embargados y validez de dicho título de cesión y recayó sentencia que tiene el carácter de firme.''

Las alegaciones 11ª. y 13ª., 14ª. y 15ª. de la misma contestación dicen así:

''11ª. El demandado Arce, niega por falta de información la alegación undécima de la demanda, alegando en contrario que Blanco nada adeuda a Morales.

''13ª. Alega también el Sr. Arce que en el pleito relacionado en el hecho anterior de esta contestación se discutió la validez del contrato de cesión antes relacionado, otorgado por Blanco a favor del Sr. Arce, y en tal pleito recayó sentencia declarando con lugar la tercería sostenida por dicho contrato, y dicha sentencia fué consentida por el Sr. José E. Morales, que no estableció recurso alguno contra ella y adquirió el carácter de firme.

''14ª. Se alega asimismo, que en la partición de los derechos y acciones, digo de los bienes de Don Jacinto Blanco González y la esposa de éste, intervinieron además del Sr. Arce, los herederos, Doña Carmen Blanco Carvajal, Doña Cándida Blanco Carvajal y Doña Gertrudis Blanco Carvajal que lo hizo por su heredero usufructuario Don Ramón de las Barcenas, a quienes afectaría la nulidad solicitada de la adjudicación hecha en dichas operaciones al Sr. Arce.

''15ª. Como última defensa se alega que de declararse la nulidad del contrato de cesión otorgada por Blanco a favor de Arce, vendrían obligados los otorgantes, de los que el Sr. Arce se encuentra casado con Doña Carmen Blanco Carvajal, a la devolución de lo que por tal contrato recibieron y que a virtud de tal contrato adquirió Arce ya casado, propiedad inmueble.''

Todas las alegaciones que se dejan transcritas fueron excluídas de la contestación de Arce por orden de la corte a virtud de moción de la parte demandante.

Celebrado el juicio, la corte de Humacao dictó sentencia en 5 de junio del año próximo pasado con los siguientes pronunciamientos:

''Primero. Que debe declarar y declara rescindido y nulo el contrato de traspaso de derechos y acciones, otorgado por Jacinto Blanco Carvajal en escritura pública de doce de marzo de 1907, ante el notario de Caguas, José A. Cajas y Machado, a favor de Rafael Arce Rollet, por haber sido hecho en fraude de acreedores.

"Segundo. Y asimismo declara nula y sin valor la adjudicación hecha a Rafael Arce Rollet de los bienes que habían de corresponder a Jacinto Blanco Carvajal en la testamentaría de los difuntos padres de éste, en escritura de partición y adjudicación otorgada ante el notario de Caguas Don Lorenzo Jiménez García, y en 22 de noviembre de 1908.

"Tercero.　Que el demandante José E. Morales, recobre de los demandados Blanco y Arce la suma del crédito $403.25, más los intereses legales hasta la fecha, con más las costas y desembolsos y honorarios de abogados.''

Contra esta sentencia interpuso la representación de Rafael Arce recurso de apelación para ante esta Corte Suprema, habiéndose celebrado la vista del mismo en 3 de mayo último.

Alega el apelante que la corte sentenciadora cometió 11 errores que se encuentran expresados en su alegato, a saber:

"La corte cometió error:

"1°. Desestimando la moción presentada por el demandado Rafael Arce Rollet al objeto de que el demandante enmendara su demanda, expresando por separado en ella cada una de las causas de acción que habían sido acumuladas en dicha demanda.

"2°. En desestimar la excepción previa presentada por el demandado Rafael Arce Rollet contra las varias causas de acción especificadas en la demanda y contra cada una de dichas acciones, por el fundamento de que las mismas no mostraban hechos suficientes para constituir las causas de acción que habían sido acumuladas o algunas de las mismas.

"3°. Desestimando la excepción previa presentada por el demandado Rafael Arce Rollet a la acción en que se reclamaba la nulidad de la adjudicación hecha a favor del demandado Arce en los procedimientos llevados a cabo para la distribución del caudal de Jacinto Blanco González y Encarnación Blanco, anteriormente Carvajal y Delgado, puesto que las otras partes interesadas que tomaron parte en dicha distribución del caudal no habían sido incluídas.

"4°. En desestimar la excepción previa interpuesta a dicha reclamación de daños y perjuicios por el fundamento de que la demanda presentada en dicho caso es ambigua e ininteligible.

"5°. Al ordenar que la parte de las alegaciones primera, tercera y undécima, que aparecen en la contestación a dicha demanda, y que fué incluída anteriormente en su alegato se eliminase.

"6º. Al ordenar que la alegación 12ª. contenida en la contestación a dicha demanda fuera eliminada.

"7º. Al ordenar que la alegación 13ª. de la demanda fuera eliminada.

"8º. Al ordenar que la alegación 14ª. expresada en la contestación a dicha demanda fuera eliminada.

"9º. Al ordenar que la alegación 15ª. de la contestación a la demanda fuera eliminada.

"10º. Al considerar que un crédito existía por la suma de $403.25 contra Jacinto Blanco Carvajal que afectaba a la cesión de derechos y acciones que hizo Blanco a favor de Rafael Arce.

"11º. Al considerar que Jacinto Blanco Carvajal era insolvente y estaba incapacitado por tanto de hacer el pago."

Estos numerosos errores que han sido alegados pueden ser considerados por este tribunal en tres grupos, para la mayor conveniencia y con el fin de evitar una innecesaria extensión en la consideración de los mismos y ahorrar tiempo. En el primer grupo señalaremos los cuatro primeros errores que han sido enumerados y que se refieren a la desestimación de la moción y excepciones presentadas por el demandado; en el segundo grupo incluiremos aquellos enumerados 5, 6, 7, 8 y 9, en los que se alega que la corte sentenciadora eliminó de los autos ciertas alegaciones que se hicieron en la contestación de los demandados; y dejaremos para el tercer grupo los dos últimos errores que han sido indicados, y en los que se alega que la corte sentenciadora resolvió indebidamente que la prueba era suficiente para mostrar la existencia de un crédito a favor de Morales y en contra de Blanco por la suma de $403.25, y la insolvencia de este último.

I. Con referencia a haber la corte desestimado la moción del demandado Arce, en la que se solicitaba que el demandante fuera obligado a enmendar su demanda y a exponer separadamente sus causas de acción, únicamente tenemos que expresar en primer término que en la demanda realmente se ha alegado sólo una causa de acción, o sean los fraudes que han sido alegados, y por los cuales el demandante trata

de obtener la rescisión del contrato y la nulidad de otros procedimientos que necesariamente dependen del mismo. Además, si hubo indebida acumulación de diferentes causas de acción, el demandado debió haber formulado una excepción previa especial, lo que no hizo. (*McFarland* v. *Holcomb*, 123 Cal., 87; *Lawrence* v. *Montgomery,* 37 Cal., 183.)

Solamente es necesario leer la demanda para que se vea que la misma contiene alegaciones de hechos suficientes que constituyen una causa de acción. (Art. 122 y 133 del Código de Enjuiciamiento Civil.)

El defecto de partes demandadas debe aparecer de las alegaciones contenidas en la demanda, para que pueda fundarse en el mismo una excepción formulada por tal motivo. Al resolver las excepciones que se formulen a una demanda no pueden ser tomadas en consideración aquellas cuestiones que no aparezcan de la demanda. (Art. 105, Código de Enjuiciamiento Civil.) La excepción es por sí defectuosa, por no expresar los nombres de las partes, que según en la misma se alega, son necesariamente partes demandadas en este pleito. (Bliss on Code Pleadings, sec. 411.)

La demanda es también suficiente en tanto en cuanto la misma se refiere a daños y perjuicios, pues está de acuerdo con el artículo 1265 del Código Civil.

II. ¿Procedió correctamente la corte al eliminar las varias defensas contenidas en la contestación, en las cuales se fundaba el demandado? En primer lugar, toda aquella parte de la contestación en la que se trataba de reanudar la cuestión referente a la deuda de Blanco a Delgado y Díaz, era impertinente, puesto que la cuestión había sido resuelta por una sentencia definitiva de tres cortes, en sus respectivos grados de apelación en el procedimiento, y también debe ser considerada como cosa juzgada, *res judicata*. En segundo lugar, la cuestión relativa al traspaso fraudulento no podía ser promovida por el demandado Morales mediante reconvención en el procedimiento de tercería en que se discutía el derecho de propiedad, puesto que no existía ninguno a

favor del demandado y en contra del demandante, según se determina en el artículo 111 del Código de Enjuiciamiento Civil, siendo Blanco un codemandado de Morales en aquellos procedimientos, y Arce el demandante. En el presente caso, tanto Arce como Blanco son necesariamente demandados, y la cuestión con respecto a un traspaso fraudulento no puede haberse alegado en los procedimientos para discutir el derecho de propiedad, que fueron seguidos por Arce. Por tanto, vemos que no puede estar comprendido Morales dentro de la sanción del artículo 112 del Código de Enjuiciamiento Civil. La cuestión referente a contrademandas se refiere más particularmente a cuestiones de cuentas y demandas de dinero, y no tuvo por objeto aplicarse a asuntos referentes a títulos sobre un terreno u otra propiedad. (Bliss on Code Pleadings, Sec. 390.)

En tercer lugar, la presente acción es una que nunca pudo haberse combinado con aquella en que se alegaba el derecho de propiedad reclamado en juicio de tercería, ni pudo haber sido discutida en tal procedimiento; por tanto, una sentencia dictada en un caso de esa naturaleza no puede alegarse como *cosa juzgada,* en un caso como éste. Un pleito como el presente para anular un traspaso fraudulento no tiene ninguna otra relación con el derecho a la propiedad que el pertenecer al traspaso que se ha atacado, siendo por consiguiente los dos casos completamente independientes uno de otro, debiendo cada uno prevalecer o nó por sus propios méritos o desmerecimientos.

Y en cuarto lugar, los párrafos décimocuarto, y décimoquinto contenidos en la contestación, fueron debidamente eliminados, porque no se ajustaban a las reglas de las buenas alegaciones.

No encontramos por consiguiente, que se haya cometido ningún error en las resoluciones tomadas por la corte, al eliminar de las alegaciones aquellos puntos innecesarios e impertinentes, reduciendo las cuestiones a aquélla sola que

se refería a la existencia de fraude al hacer el traspaso que ha sido atacado.

III. Esto nos trae finalmente a la cuestión principal en el caso, o sea si existe o nó prueba suficiente que demuestre que se haya cometido fraude en la transacción celebrada entre Blanco y Arce; e incidentalmente, a la existencia de la deuda contra Blanco y la insolvencia del mismo. Al considerar esta cuestión en conjunto nos encontramos con una proposición compleja que envuelve varias cuestiones secundarias que surgieron en el curso de la discusión. Con respecto a la existencia de la deuda que se alega que Blanco tiene con Morales, los autos del caso que el último siguió contra el primero en cobro de dinero, y que fueron presentados como prueba con el consentimiento de ambas partes, mostraron que se había dictado una sentencia a favor del apelado y en contra de Blanco por la suma de $403.25 Esta sentencia fué dictada en 29 de junio de 1908 en una apelación que se estableció procedente de la corte municipal, y fué confirmada por la Corte Suprema en 20 de abril del año siguiente. (*Morales* v. *Blanco,* 15 D. P. R., 237.) No puede haber duda alguna, atendidas todas las pruebas del juicio, de que Blanco era deudor de Morales en la época en que se hizo el traspaso a Arce.

Y veamos si el cobro de esta deuda no pudo hacerse por la actitud tomada por el apelante y sus transacciones con Blanco. Aparece de los autos que el márshal hizo un embargo en 24 de abril de 1907, para asegurar la efectividad de la sentencia a que se ha hecho referencia en el caso de que se dictara, sobre dos parcelas de terreno, una urbana y la otra rústica, en la que Blanco tenía una participación procedente de la herencia de su padre. Como consecuencia de los procedimientos que se siguieron para que se declarara el derecho de propiedad con respecto a estas dos fincas, se vió privado Morales de llegar al cobro de su crédito. Resulta de una escritura pública que se presentó como prueba, que en 12 de marzo de 1907 Blanco traspasó a Arce todos

sus derechos y aquellos que tenía en la herencia de su padre. Y de la prueba suministrada por el márshal y sus subalternos aparece que la orden de ejecución expedida contra Blanco se había extraviado mientras tenían lugar los procedimientos y no pudo encontrarse. Resultando además que la orden no podía hacerse efectiva, porque Blanco no tenía ninguna otra propiedad sino aquella que traspasó a Arce. Por consiguiente, debe considerarse como un hecho cierto que fué imposible hacer efectiva la sentencia dictada contra Blanco.

El traspaso hecho por Blanco a Arce ¿fué en fraude de acreedores? El artículo 1258 del Código de Enjuiciamiento Civil establece que los contratos celebrados en fraude de acreedores pueden rescindirse, cuando éstos no puedan de otro modo cobrar lo que se les deba. Manresa, al comentar sobre los artículos que concuerdan con éste del Código Civil Español (1290 y 1291), dice: "La rescisión de un contrato hecho en fraude de acreedores está justificada por los daños y perjuicios sufridos por una persona que no es parte en el contrato, pero que podría ser afectada por el mismo." (8 Manresa, 732.) La Corte Suprema de España también expresa en una sentencia dictada en 25 de octubre de 1895, "Que los contratos fraudulentos y simulados pueden rescindirse de conformidad con el artículo 1291 del Código Civil."

Por tanto, aparece de la escritura a que se ha hecho referencia, que se hizo el traspaso, y de la sentencia mencionada se probó la existencia de la deuda que aun subsistía. Resulta además de la prueba que Arce era cuñado de Blanco, y obraba como abogado suyo, y tenía conocimiento de todo lo que se relacionaba con la deuda y la imposibilidad que había de cobrarla, por el hecho de que Blanco no tenía ninguna otra propiedad además de aquella que traspasó a Arce. De todos estos indicios se ve claramente la naturaleza fraudulenta del traspaso.

Pero ¿quedó Morales impedido de cobrar su deuda por el hecho de haberse celebrado el contrato entre Blanco y Arce? La acción de rescisión de un contrato en que medie

fraude es subsidiaria y no podrá ejercitarse sino cuando el perjudicado carezca de otro recurso legal para obtener la reparación del perjuicio, (art. 1261 del Código Civil); y la Corte Suprema de España en una sentencia dictada en 9 de noviembre de 1901 y al interpretar un artículo semejante a nuestro artículo 1261 (art. 1294 del Código Español) expresa que aunque la acción puede ser subsidiaria, no es porque carezca de ninguno de los elementos de una acción principal.    Es independiente de cualquiera otra, pero según el Código no puede ejercitarse mientras las personas perjudicadas tengan otros medios para obtener la reparación del perjuicio.    Morales no tiene ningún otro medio para cobrar su crédito, pues resulta claramente probado que Blanco no tiene ninguna otra propiedad, sino la que traspasó a su codemandado Arce. La acción es por consiguiente procedente.

Y llegamos ahora por último al punto sobre el cual gira todo el caso, o sea la existencia de fraude.    Nuestro Código Civil dice en su artículo 1264, lo siguiente:

"Se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito.

"Tambien se presumen fraudulentas las enajenaciones a título oneroso, hechas por aquellas personas contra las cuales se hubiere pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes."

(Sec. 1264, Código Civil.)

Veamos la interpretación que ha sido dada a la sección concordante en· el Código Español por los grandes comentaristas.

Se ha dicho por Manresa al interpretar el artículo 1297 del Código Civil Español, concordante con uno de nuestro Código, que:

"El supuesto más frecuente en las enajenaciones en fraude de acreedores, no es el de las transmisiones a título gratuito, así expresado en aquéllas, sino el de enajenaciones supuestas o reales, pero

hechas gratuitamente, de ordinario a los probables herederos del deudor, y disfrazadas como enajenaciones a título oneroso.''

(8 Manresa, 754.)

Y Scaevola en sus comentarios al artículo 1291, párrafo 3°., ha dicho lo siguiente:

''Finalmente y para explicar las palabras que se usan en el Código en este párrafo 3°. consideraremos que dicho párrafo no se refiere solamente a los traspasos hechos a manera de venta sino como una donación y cesión, y también según se ha dicho en la sección 39 de la Ley Hipotecaria, de creación o renuncia de derecho.''

Y en cuanto a la cuestión de fraude se ha dicho por el mismo comentarista:

''Este incidente constituye en primer lugar los hechos por virtud de los cuales el traspaso o renuncia de bienes y derechos se hace. Estos hechos, la venta de la cosa, inscripción a favor de un tercero, la relación entre el vendedor y el comprador, la falta de entrega del precio y el perjuicio causado a los acreedores quedan necesariamente reservados a la consideración de las cortes, pero en tales casos puede haber buena o mala fe, conocimiento del perjuicio, y conciencia del engaño, sinceridad y nobles propósitos.''

(20 Scaevola, 909.)

Examinemos los autos que han sido presentados con respecto a esta cuestión. Aparece de la prueba documental, lo que sigue: una cuenta contra Blanco que lleva fecha anterior a 12 de marzo de 1907 y la cesión de derechos y acciones otorgada por Blanco a Arce en esa fecha. Y aparece también de las declaraciones de los testigos que Arce, como cesionario, tenía conocimiento de la existencia del crédito. El mismo actuó como abogado en representación de su cuñado Blanco en el pleito establecido en cobro de dinero; tomó parte en el arreglo de dicha cuenta e hizo ofrecimientos de pago; y este demandado, sabiendo todo esto y siendo abogado, y por consiguiente una persona conocedora de la ley, acepta el traspaso de la única propiedad de que Blanco podía estar en posesión, y entró en posesión de la misma por un valor inferior que aquel que la misma parecía tener en la fecha

en que se hizo la distribución de la herencia, no habiéndose presentado prueba tendente a destruir dicha presunción de fraude.

Con respecto a la prueba necesaria que demuestre fraude, se ha dicho en las sentencias americanas:

"El descubrimiento de la intención fraudulenta es raras veces objeto de prueba directa y concluyente. Exigir prueba concluyente en un caso de fraude sería atacar los fines de la justicia y destruir los mismos; la ley, por tanto, exige solamente un grado razonable de certeza y esta es una conclusión a que se ha llegado por la jurisprudencia."

*Southern L. Ins. Co.* v. *Wilkinson,* 53 Cal., 153.
*Strong* v. *Hines,* 35 Miss., 201.

Debe observarse además, que para que se pueda establecer una intención fraudulenta entre personas que tengan relaciones confidenciales, solamente se exige prueba satisfactoria.

2 Rice on Evidence, 955.

Se prescribe además en nuestro estatuto que:

"Tampoco tendrá lugar la rescisión cuando las cosas objeto del contrato se hallaren legalmente en poder de terceras personas que no hubiesen procedido de mala fe."

Artículo 1262, párrafo 2º., Código Civil Revisado.

¿Puede considerarse al demandado Arce como tercero? La Corte Suprema de España, al interpretar este artículo concordante del Código Civil Español, dice lo siguiente:

"La persona que interviene en el contrato como comprador no es tercero ni puede ser considerado como tal."

Sentencia de 25 de octubre, 1895.

Por consiguiente sólo queda por considerar la cuestión de los daños y perjuicios que han sido alegados en la demanda. Se dice en el artículo 1265 del Código Civil Revisado, que:

"El que hubiese adquirido de mala fe las cosas enajenadas en fraude de acreedores, deberá indemnizar a éstos de los daños y per-

juicios que la enajenación les hubiese ocasionado, siempre que por cualquier causa le fuere imposible devolverlas.''

Y se ha dicho por Manresa interpretando el artículo concordante del Código Civil Español, o sea el 1298, que:

''La responsabilidad comprende los daños y perjuicios que la enajenación hubiera ocasionado, o sea el importe del crédito, y en su caso, de los intereses, en la medida en que los hubiera podido satisfacer, el valor de la cosa enajenada, con más los gastos que el ejercicio de la acción rescisoria haya ocasionado.'' (8 Manresa, 761.)

De un examen cuidadoso de todos los hechos contenidos en los autos y considerando a la vez los principios invocados por los abogados, así como todas las autoridades que han sido citadas por las mismas, tanto españolas como americanas, que hemos tenido ocasión de examinar, encontramos que la corte sentenciadora estuvo ampliamente justificada al dictar la sentencia que dictó en junio 5, 1911 y debe ser confirmada en todas sus partes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.